**William R. VAN GEMERT et al., Plaintiffs-Appellees,**

v.

**The BOEING COMPANY (formerly the Boeing Airplane Company) et al., Defendants-Appellants.**

**No. 551, Docket 77–7547.**

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1977.

Decided March 27, 1978.

S. Hazard Gillespie, New York City (Davis Polk & Wardwell, New York City, of counsel), for defendants-appellants, The Boeing Company (formerly The Boeing Airplane Company), et al.

Stuart D. Wechsler, New York City (Kass, Goodkind, Wechsler & Gerstein, New York City, of counsel), for plaintiffs-appellees, William R. Van Gemert, et al.

Irving Steinman, New York City (Samuel Weinstein, New York City, of counsel), for plaintiffs-appellees, William R. Van Gemert, et al.

Norman Winer, New York City (Nathan, Mannheimer, Asche, Winer & Friedman, New York City, of counsel), for plaintiffs-appellees, William R. Van Gemert, et al.

Before MULLIGAN, OAKES and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

In 1975, this Court ruled that appellant Boeing did not give adequate notice of its intention to call certain convertible debentures and held it liable in this class action brought on behalf of debenture holders who failed to convert. *Van Gemert v. Boeing Company*, 520 F.2d 1373 (2d Cir.), *cert. denied*, 423 U.S. 947, 97 S.Ct. 364, 46 L.Ed.2d 282 (1975). Subsequent proceedings in district court resulted in an order directing the deposit of the amount of the judgment award, approximately six million dollars, in an escrow account in a New York City bank. A Special Master was appointed, with authority to receive and pass upon proofs of claim and to supervise the administration of the judgment.

The order provided further that the members of plaintiffs' committee of attorneys be awarded their fees, expenses and disbursements, as fixed by the court, payment thereof to be made from the total amount of the judgment.[1] The sole issue on this appeal is whether that portion of the escrow fund which is not claimed hereafter by class members can be charged with a pro rata share of the attorneys' fees and expenses. We hold that until absent class members receive the benefit of the attorneys' labors by claiming their portions of the award, no such charge or assessment

---

1. The district court ordered that affidavits in support of counsels' application for fees be submitted within twenty days of the entry of judgment.

may be paid from their undistributed shares.

The question of unclaimed funds has been before this Court on a prior appeal which followed our original decision on liability. *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977). On that appeal, we rejected a request that the shares of non-claiming class members be distributed pro rata among claiming members in order to assist them in paying their legal fees and disbursements. Citing *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), we held that the "extraordinary remedy" of fluid class recovery was not justified under the circumstances of this case.[2] *Van Gemert*, 553 F.2d at 815–16. Appellees now seek to avoid the effect of our prior holding by requesting only a portion of the unclaimed funds, with payment thereof to be made directly to their attorneys.

In so doing, they rely upon the equitable or common fund doctrine fathered by the leading cases of *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881), and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). Under this doctrine, an attorney who creates or preserves a fund for the benefit of others in addition to his client may be awarded compensation from those who accept the fruits of his labors. *Pettus*, 113 U.S. at 125, 127, 5 S.Ct. 387. This award is not based upon the existence of an attorney's lien against the fund, but rather upon the equitable principle that those who benefit from the attorney's services should pay for them. *General Finance Corp. v. New York State Rys.*, 3 F.Supp. 975, 976 (W.D.N.Y.1933) (quoting *In re Gillaspie*, 190 F. 88, 91 (N.D.W.Va. 1911)). More recent decisions, expanding on the concept of unjust enrichment, have held that under appropriate circumstances an attorney may have a right to compensa-

tion from the beneficiaries of his labors even though his efforts have not been directed toward the creation or preservation of a fund. *See, e. g., Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1008 (2d Cir. 1975).

Appellees contend that the foregoing line of authorities justifies an award for attorneys' fees from the six-million dollar class award regardless of whether the entire award is distributed to class members. This argument has a surface appeal because it suggests a procedure that not only appears to be reasonable, but also is simple to apply. There are, however, other factors which must be considered in weighing the merits of appellees' proposal.

Class actions, termed by some as "lawyer's lawsuits", *see Developments in the Law—Class Actions*, 89 Harv.L.Rev. 1318, 1605 (1976), have received a good deal of criticism; and much of this has been directed at the substantial fees awarded to class attorneys. *See, e. g., Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1049–50 (2d Cir.), *cert. denied*, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). Terms such as "golden harvest of fees", *Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26, 30 (S.D.N.Y.1972), "astronomical fees", M. Blecher, *Is the Class Action Rule Doing the Job? (Plaintiff's Viewpoint)*, 55 F.R.D. 365, 366 (1972), and "enormous fees", Comment, 54 U.Det.J. Urb.L. 598, 611 (1977), are used to describe the allowances, which often run into the millions of dollars.[3] Critics point particularly to over-generous applications of the equitable fund doctrine, by means of which massive fees are awarded attorneys with too little regard for the interests of the class members. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.

---

**2.** Because the Supreme Court vacated and remanded *Eisen* on other grounds, it did not pass upon the issue of fluid class recovery. However, the Ninth Circuit appears to share this Circuit's unwillingness to treat the class as a whole as a judicial entity for purposes of suit.

*See In re Hotel Telephone Charges*, 500 F.2d 86, 89–90 (9th Cir. 1974).

**3.** Counsel in this case are requesting fees of approximately two million dollars.

1977). This criticism, much of which is justified, prompts careful inquiry into whether it would be a misapplication of the equitable fund doctrine to permit counsel herein to collect part of their fees and expenses from the allocable shares of class members who claim none of the proceeds of the recovery.

Although the amendments to Rule 23 have been in effect since 1966, only a few class actions for damages have gone through a trial on the merits to judgment. *Eisen*, 479 F.2d at 1018–19; C. Wolfram, *The Antibiotics Class Actions*, 1976 Am.B. Foundation Research J. 251, 357; W. Simon, *Class Actions—Useful Tool or Engine of Destruction?*, 55 F.R.D. 375, 378 (1972); Note, *The Cy Pres Solution to the Damage Distribution Problems of Mass Class Actions*, 9 Ga.L.Rev. 893, 900 (1975). As a result, there has been little need to resolve the "troublesome question" of what to do with the unclaimed portion of a judgment for damages in favor of a class. *See Eisen*, 479 F.2d at 1012.[4] Fluid class recovery concepts have been adopted by a number of courts in actions which have terminated in settlement. *See, e. g., State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710 (S.D.N.Y.1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971).[5] However, precedents involving settlements are of little help when a case has been litigated through trial to judgment. *Eisen*, 479 F.2d at 1012; *City of Philadelphia v. American Oil Co.*, 53 F.R.D. 45, 71 (D.N.J.1971).

This Court expressed in *Eisen, supra,* its unwillingness to adopt the concept of fluid class recovery, and, on a prior appeal, we refused to apply it in this litigation, which is fundamentally a private dispute arising out of the debenture contract. *Van Gemert*, 553 F.2d at 815, 816. In *Eisen* we said that "the claims of many may not be treated collectively or as 'the class as a whole' . . . ." 479 F.2d at 1014. The compensation of appellees' attorneys must come therefore from the individual class members, not from the "class as a whole."

■ Although the holdings which follow *Greenough* and *Pettus* speak broadly of recovering attorneys' fees from funds, intrinsic in every case is the requirement that benefits must accrue to those against whom expenses are assessed. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 264 n. 39, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). "The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed." *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 165 (3d Cir. 1973).[6] Those who receive no benefit from the lawyer's work should not be required to pay for it. *Schechtman v. Wolfson,* 244 F.2d 537, 540 (2d Cir. 1957); *Nolte v. Hudson Nav. Co.,* 47 F.2d 166, 168 (2d Cir. 1931); *Simmons v. Friday,* 190 F.2d 849, 852 (8th Cir. 1951); *In re Irving-Austin Bldg. Corp.,* 100 F.2d 574, 578 (7th Cir. 1938); *Baltic Independent School District v. South Dakota High School Activities Association,* 362 F.Supp. 780, 786 (D.S.Dak.1973); *cf. City of Miami Beach v. Jacobs,* 341 So.2d 236 (Fla.Dist.Ct.App.1976), *cert. denied,* 348 So.2d 945 (Fla.), *cert. denied,* 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977).

---

4. Although we do not know that there will be any unclaimed funds, the history of class litigation to date has demonstrated a surprisingly small response by absent members notified of their right to make claims. *See* F. Kirkham, *Complex Civil Litigation—Have Good Intentions Gone Awry?*, 70 F.R.D. 199, 206 (1976); W. Simon, *Class Actions—Useful Tool or Engine of Destruction?*, 55 F.R.D. 375, 377–78 (1972).

5. *But see B & B Investment Club v. Kleinert's Inc.,* 62 F.R.D. 140, 150 (E.D.Pa.1974) where the Court said: "We do not perceive any reason why maximum exposure could not be provided for with provisions made, depending upon the claims presented, for a return of any excess to the defendants."

6. In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), this Court, quoting *Lindy*, said: "In its simplest terms, the purpose of the fee award is to 'compensate the attorney for the reasonable value of services benefiting the . . . claimant.'"

In a private action for damages such as this, "[t]here is no reason why the attorneys should be compensated for potential benefits not accepted by members of the class." *Blank v. Talley Industries, Inc.*, 390 F.Supp. 1, 6 (S.D.N.Y.1975); *see also* 2 H. Newburg, *Class Actions,* ¶ 2780 at 1249 (1977); E. Labowitz, *Class Actions in the Federal System and in California: Shattering the Impossible Dream,* 23 Buf.L.Rev. 601, 647 (1974); *cf. Miller v. Union Barge Line Corp.,* 299 F.Supp. 718, 721 (W.D.Pa.1969).

The application of this rule should cause no administrative difficulties on remand. Having directed the creation of an escrow account for the total amount of the possible recovery, the district court must now set a reasonable period of time for the proof of claims by class members. Because both administrative expenses and attorneys' fees and disbursements are to be charged pro rata against the awards to class members, payment of the awards must be deferred until the Special Master has completed processing the claims and his fees and expenses can be determined. At that point, the benefits accruing to class members can be "traced with some accuracy", and the costs can be "shifted with some exactitude to those benefiting." *Alyeska,* 421 U.S. at 265 n.39, 95 S.Ct. at 1625. The district court may then make an appropriate award for attorneys' fees and expenses.

If any funds remain unclaimed, the Court must make appropriate disposition of them. Because it is conjectural as to whether there will be any unclaimed funds and because we have not been asked to consider the question of their disposition on this appeal, we express no present view on this matter. Recognizing, however, the possibility that unclaimed funds will be returned to

the defendant,[7] we point to the Supreme Court holding in *Alyeska* as an additional reason why attorneys' fees should not now be charged against the entire escrow fund.

Reversed and remanded for further proceedings in accordance with this opinion.

OAKES, Circuit Judge (dissenting in part):

I first disavow the rhetoric of the majority directed at class actions and "class action lawyers." Class actions often are valuable tools for the individual plaintiff seeking justice against a defendant whose resources enable it to obtain the highest-paid lawyers to engage in such extensive discovery and other litigation techniques that one, two or three plaintiffs otherwise could never afford to conduct the lawsuit. This very case exemplifies the usefulness of class actions. Holders of $1.5 million of debentures that were worth $4 million only if converted by a given deadline were given inadequate and unreasonable notice of Boeing's intention to redeem the debentures and of the conversion deadline. The class members therefore failed to exercise their conversion rights by the deadline. *Van Gemert v. Boeing Co.,* 520 F.2d 1373, 1378, 1383 (2d Cir.) (*Van Gemert I*), *cert. denied,* 423 U.S. 947, 97 S.Ct. 364, 46 L.Ed.2d 282 (1975). A decade of hard-fought difficult litigation has at last resulted in an award to the debenture holders which, had the original notice been sufficient, would have rightfully been theirs for the asking. In the process, against uphill odds, the lawyers for the now successful plaintiffs did an extraordinarily capable job, having even "made new law" on a complicated set of facts. Thus, criticism against class actions generally or plaintiffs' attorneys' fees in particular[1] falls flat when focused on the case at bar.

---

7. Those advocates of fluid class recovery who view class actions primarily as deterrents against wrongful conduct urge that unclaimed funds be disposed of in a manner similar to the cy pres doctrine of the law of trusts, or that they escheat to the state. 7A Wright & Miller, *Federal Practice and Procedure* § 1784 at 64 (Supp.1976); S. Gordon, *Manageability Under the Proposed Uniform Class Actions Act,* 31

Sw.L.J. 715, 725 (1977); *Uniform Class Actions,* 63 A.B.A.J. 837, 842 (1977). However, even some proponents of fluid class recovery concede that under some circumstances it may be appropriate to return unclaimed funds to the defendant. *See, e. g., Uniform Class Actions Act* (U.L.A.) § 15(b).

1. Those who criticize the fees of class action plaintiffs' lawyers seem to overlook the fees

I am required to agree, however, with the basic theory of the majority opinion—that attorneys' *fees* are recoverable solely from the class members who file proper proofs of claim, rather than from the entire class fund—because so-called fluid class recovery was rejected in *Van Gemert v. Boeing Co.,* 553 F.2d 812, 815–16 (2d Cir. 1977) (*Van Gemert II*),[2] relying on *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005 (2d Cir. 1973), *vacated and remanded on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *Van Gemert II* is the "law of the circuit"; absent en banc treatment of the issue I am bound to follow it, therefore, whether or not I agree.

But this court's rejection of fluid class recoveries does not end the inquiry here. It seems to me that there is a sharp distinction between attorneys' fees and attorneys' disbursements. Plaintiffs' attorneys' fees in class actions generally being contingent, as they are here, are earned only if there is recovery. And *Van Gemert II's* implicit holding, *see* note 2 *supra,* that attorneys' fees may not be imposed on unclaimed funds, must be based on a similar theory— when there are no claimants, there is no "recovery"; thus this portion of the fund has not been "earned." Reimbursement of disbursements, by contrast, is not dependent on success. In fact, attorneys are precluded from expending funds on behalf of their clients unless the client remains ultimately liable for the expenses. *See* ABA Code of Professional Responsibility, Canon 5, Ethical Consideration 5–8, Disciplinary

Rule 5–103(B). Accordingly, the number of ultimate claimants should not affect an attorney's right—perhaps his duty—to recover all disbursements from the entire fund. Additionally, fundamental principles of fairness underlying established law relating to recovery of expenses from a common fund,[3] *see Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), militate in favor of permitting repayment of attorneys' disbursements out of the fund as soon as it is established. These expenses, incurred for the benefit of all, are necessary if there is to be recovery by anyone. Attorneys who advance such sums do so expecting, as they must, reimbursement. Furthermore, if they are only repaid per claimant—that is, by computing the amount that each class member would have to contribute if the whole award were claimed, and then charging the claiming class members for disbursements as if all potential claimants had filed—the attorneys would have to bear the loss for the portion of out-of-pocket costs attributable to entitled class members who failed to file their claims.[4] This result simply does not make common sense. I therefore dissent in part.

---

charged by class action defendants' lawyers. Could it be that a double standard is being applied?

2. *Van Gemert II* rejected the proposition that class members who file proper proofs of claim should be entitled to pro rata distribution of the unclaimed portion of the damage award. In doing so, it found unconvincing the argument that the unclaimed funds should be awarded to the claiming members of the class to defray their legal expenses. I agree with the majority to the extent that this holding precludes use of the unclaimed funds to pay the legal fees of class action attorneys.

3. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257, 264–65 n. 39, 95

S.Ct. 1612, 44 L.Ed.2d 141 (1975), expressly preserved the common fund doctrine.

4. Of course, if the filing claimants were required to absorb the total disbursements out of their pro rata share of the recovery, the attorneys would obtain complete reimbursement. But this would reduce the filing claimants' compensation and, in turn, be unfair to them.

The result of the majority decision, *ante* at 736–737, is either that the attorneys absorb the disbursements attributable to unfiled claims or that the claiming members of the class end by being responsible for paying all attorneys' disbursements—perhaps even fees— from their shares of the award. With either result I disagree.