Aldo DelNOCE, Plaintiff,

v.

DELYAR CORPORATION et al., Defendants.

No. 72 Civ. 1819.

United States District Court, S. D. New York.

May 19, 1978.

Irving Steinman, Shea, Gould, Climenko & Casey, New York City, for plaintiff.

Cadwalader, Wickersham & Taft, Milbank, Tweed, Hadley & McCloy, New York City, for defendants.

## MEMORANDUM DECISION

BRIEANT, District Judge.

By a Memorandum Decision in this action, dated February 27, 1978, this Court found after a hearing that a proposed Stipulation of Settlement dated September 8, 1977, which if approved would dispose of the above entitled class action, was fair, reasonable and adequate. A final Judgment was filed March 9, 1978 dismissing the action with prejudice and reserving, *inter alia,* jurisdiction over the parties and the settlement fund to fix the allowance of counsel fees, expenses and disbursements. Familiarity with these documents and all prior proceedings herein is assumed.

Paragraph 9 of the Stipulation of Settlement provides in relevant part:

"[P]laintiff's attorneys will apply to the Court for an allowance of fees for their services and the services of their experts in this litigation not to exceed $800,000 in the aggregate. Defendants agree not to oppose any such application and defendant Amerada Hess agrees to promptly pay any such allowance ordered by the Court provided that the total amount thereof does not exceed $800,000. If the proposed settlement is approved by the Court, plaintiff's attorneys will also apply to the Court for reimbursement of expenses incurred in the prosecution of this litigation not to exceed $25,000, to be paid out of the fund, as well as for reimbursement of those expenses referred to in paragraph 8(a) hereof and paragraph 1 of

Exhibit D annexed hereto to be paid out of the fund. Defendants may oppose any such applications by plaintiff's attorneys."

Pursuant to the Stipulation, the fees of the attorneys and experts constitute in effect a separate payment to be made by the corporate defendant without regard to the $4,000,000 payable to members of the class. Allowance of the fees of the attorneys and experts within the amount contemplated by ¶ 9 of the Stipulation will not reduce the Fund provided for in paragraph 2(a) of the Stipulation. The other expenses and disbursements, however, to the extent approved will be a direct charge on the Settlement Fund.

Plaintiff's counsel have now made an application for their fees and disbursements. There are now before the Court affidavits in support of the applications, and affidavits in opposition. These affidavits have been considered by the Court. There is no necessity for an evidentiary hearing.

While the attorneys are presenting a joint application for a single award of fees, it may be helpful to an understanding of the matter if the services of the various counsel be summarized separately.

This action was commenced on April 25, 1972 in this Court, as class litigation in behalf of all shareholders of Amerada Petroleum Corporation ("Amerada") which merged on June 20, 1969 with Hess Oil & Chemical Corporation ("Hess Oil") to form Amerada Hess Corporation ("Amerada-Hess"). Class action status was declared initially December 23, 1974, and redefined on May 8, 1975. The case was tried before me without a jury on June 23, 24, 25, 26 and 30, 1975. By Findings of Fact and Conclusions of Law dated July 30, 1976, made after post-trial briefing, the Court found liability on the part of certain defendants, reopened the trial record to permit competent proof of the damages, and referred the matter to a Magistrate for the purpose generally of assisting counsel to the parties in resolving the amount of damages consistent with the Court's theory of liability, and with a view toward scheduling further proceedings. Thereafter, with the aid of the Magistrate and the Court, the litigation was settled.

In addition to this lawsuit, plaintiff was attempting to maintain a *derivative* action, in this District, arising out of the same facts (*Del Noce v. Jomarco, Inc. et al.*, 70 Civ. 4414) and a separate suit of some sort in the Chancery Court of Delaware.

As a result of the reassignment in the Spring of 1975 of old civil cases for immediate trial under what was euphemistically described as a "crash program" requiring all such cases to be tried or disposed of prior to June 30, 1975, this case was transferred to my docket. Compliance with the crash program necessitated employment by plaintiff of special trial counsel having the resources to analyse the complete factual circumstances of the litigation and accomplish the task of getting this case ready and trying it on schedule. To do so, plaintiff in about April 1975 retained the firm of Shea Gould Climenko & Casey, Esqs. to comply as an alternative to dismissal. Milton S. Gould, Esq. of that firm accepted responsibility for the litigation and acted as trial counsel to plaintiff. His initial efforts, and those of the Court, to work out a settlement were unsuccessful, although not for want of trying. His firm was required to and did, with the assistance of Irving Steinman, Esq., the attorney of record, try the merits as noted above. Only later, working in cooperation with the Magistrate and counsel for the defendants, were these attorneys ultimately successful in reaching what this Court has already found to be a fair and reasonable settlement, beneficial to the plaintiff class.

The Shea firm shows that in this lawsuit, where compensation was contingent on success, services were rendered between April 1975 and October 31, 1977 amounting to a total of 1,769.75 hours, none of which were concerned with the fee application. The monetary value of these time charges, at rates varying from $200 per hour for a senior partner to $50 for certain associates amounts to $153,066.25 of which $3,013.75 represents services of paralegals at $35 per hour.

■ Before proceeding further we advert to *Grinnell I* and *Grinnell II*, reported, respectively *City of Detroit v. Grinnell Corporation* at 495 F.2d 448 (2d Cir. 1974) and 560 F.2d 1093 (2d Cir. 1977). These cases are regarded as declaratory of existing law. Legal fees, before and after *Grinnell I* and *Grinnell II* were and are to be based on principles of *quantum meruit*. In *Grinnell I* it was held (p. 470 of 495 F.2d):

> "In its simplest terms, the purpose of the fee award is to 'compensate the attorney for the reasonable value of services benefiting the . . . claimant.' *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation,* . . . 487 F.2d [161], at 167."

■ This established principle was reiterated in *Grinnell II* (p. 1098 of 560 F.2d). It remains clear that the amount recovered is still "generally accepted factors to be weighed in determining a reasonable attorney's fee" (*Grinnell I,* p. 470, *supra*). The amount recovered cannot be excluded from the totality of the "parameters" considered. (*Grinnell I,* p. 470, *supra*).

Judge Weinfeld of this Court has held in *Voege v. Ackerman,* 70 F.R.D. 693, 695 (S.D.N.Y.1976):

> "[A]s *Grinnell* [I] makes clear, there are no absolutes which permit determination of a fee with mathematical precision. While time is a factor, also stressed by plaintiffs' counsel, it is, as this court has observed, of only relative importance.[3]
> [3. *Blank v. Talley Indus.,* 390 F.Supp. 1 (S.D.N.Y.1975); *see also Levin v. Mississippi River Corp.,* 377 F.Supp. 926, 931 (S.D.N.Y.), *aff'd on opinion below,* 508 F.2d 836 (2d Cir. 1974).]

The traditional principles of *quantum meruit* are probably best stated in *Matter of Potts,* 213 App.Div. 59, 209 N.Y.S. 655, 657 (Fourth Dept. 1925):

> "In general, the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained. [Citations omitted]

> The value of an attorney's services cannot be limited to 'specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered.' *Matter of Sewell,* 32 Misc.Rep. 604, at page 607, 67 N.Y.S. 456.

> That is necessarily so, for the real value of an attorney's services may be the result of his thought about the legal questions involved, while away from his office, at home, or elsewhere. An idea thought out in bed at night may be the most valuable part of an attorney's services, and may constitute a solution of the vital question involved in a litigation. The standard by which the value of such services is measured is, however, the fair and reasonable value of the services rendered after considering the various elements referred to. . . . It is the ability of the attorney and his capacity and success in handling large and important matters and in commanding large fees therefor, the amount involved, and the result obtained, which are of prime importance in determining what constitutes a just and reasonable charge."

■ Tested against the aforementioned criteria the services rendered by the Shea firm herein have a value which is at least equal to the hourly charges of that firm for non-contingent matters.

We turn now to the claims of Irving Steinman, Esq., the attorney of record, and Charles Trynin, Esq., the attorney who claims that he first perceived the liability here, when consulted by his client Aldo Del Noce in 1969, and associated himself with Steinman as attorney of record to protect the interests of Del Noce and the class.

Both these attorneys are experienced practitioners specializing in the litigation of claims generally similar to those pleaded here. Trynin has been an attorney since 1930, and Steinman since 1929. Assisting them was Samuel Weinstein, Esq., Mr. Steinman's office associate, experienced in

such matters in his own right. With understandable pride, Steinman points to the findings of then District Judge Mansfield in *Fields v. Wolfson,* 41 F.R.D. 329 (S.D.N.Y. 1967), which characterize himself and Weinstein as "being so experienced in this type of litigation." For his part, Trynin points to the comment of then District Judge Gurfein in *Quirke v. Chessie Corp.,* 368 F.Supp. 558, 563 (S.D.N.Y.1974) "I have a high regard for Mr. Trynin as an experienced and able attorney in securities cases involving both derivative and class actions."

■ These attorneys rendered most of their services in this litigation during years in which counsel for plaintiffs in this District in contingent cases generally did not record time charges; a task most lawyers find as disagreeable as it is helpful in assuring fair fees. We do not understand how this custom grew up, since as we have noted, the time spent has always been an element in fixing a *quantum meruit* claim for legal services. But the fact is that recording time charges was not customary until sometime after *Grinnell I* was decided in 1974. Time records generated after the fact and solely by estimation need to be looked at carefully.

Mr. Trynin's account shows that he was consulted by Del Noce in the first instance and made a preliminary examination of those facts then a matter of public knowledge, and advised that if he found the claim meritorious he would accept a retainer with the understanding that he could, if so advised, retain Steinman as attorney of record, sharing with Steinman in responsibility and in fees. Trynin was retained in writing on a contingent basis by plaintiff on May 25, 1970. On September 9, 1970 he drafted the complaint in the *Jomarco* case, forwarded his draft to Steinman, and continued thereafter to counsel and assist him. His "reconstructed" hourly charges over approximately seven years are estimated at 955 hours from diary entries, and 475 hours more based on "reviewing the file and the mass of drafts, documents and briefs that I had prepared [and] based on my knowledge of my working pace," making a total of 1,430 hours claimed. Trynin values his time charges at $220 per hour, a rate in excess of that claimed by Milton S. Gould, Esq., the experienced advocate who actually tried this case. This leads to a claim for $314,-600.

Steinman's application shows the usual attention to matters of pleadings, motions and pre-trial discovery which unfortunately are time consuming and characterize the conduct of this sort of litigation. He asserts that illness of a temporary nature prevented him from complying with the trial date imposed by the Court, and suggests that the case was substantially ready for trial in the Spring of 1975. It turned out that he was able to attend the trial and participate in the settlement discussions. He claims compensation for 255 hours of his office associate Samuel Weinstein, Esq., and 2,875 hours for himself, excluding the time spent in preparing the fee application.

Plaintiff's counsel will be required to perform additional services in connection with processing and effectuating the settlement, for which no further claim will be made. Steinman asserts that the total time charges for himself, Trynin and Weinstein and excluding the time charges of the Shea firm, of $153,066.25, amounts to $755,875. Viewed together, applicants assert that they are entitled to fees, if computed on a non-contingent basis, of $908,941.15, not counting the charges of plaintiff's experts, which are by agreement part of the $800,-000 limitation set forth in the settlement agreement.

Counsel have, to an extent, simplified this Court's work in fixing fees here by agreeing together that a single fee shall be awarded, based on the totality of the services rendered, which counsel will divide among themselves by private arrangement as if they were law partners, or joint venturers as to this particular piece of business. Accordingly, the Court is concerned only with the fairness and propriety of a single amount, to be fixed by the Court in accordance with the traditional principles of *quantum meruit,* and in compliance with *Grinnell I & II,* just as if all the services had been rendered by a single law firm.

■ There are factors which tend to reduce the claimed value of the legal services in this case, and separate factors exist which enhance that value. We have already adverted to the problems incident to the unavoidable use here of "reconstructed" or estimated time charges. Furthermore, these charges include efforts in connection with the related derivative *Jomarco* action, and the Delaware Chancery suit. These latter cases were generally useless, and it is open to question whether an attorney being privately retained by a knowledgeable litigant would have been authorized to take these excursions merely for whatever tactical or informational value they might have had. The analysis set forth in the affidavit of William E. Jackson, Esq., attorney for Amerada-Hess, submitted December 13, 1977 in opposition to the fee request, correctly states the situation with respect to the *Jomarco* and the Delaware cases. They are not part of "this litigation." Plaintiff did not prevail. However, to the extent that counsel's efforts in those cases and the knowledge acquired thereby was useful in the trial or settlement negotiations in this class action, such efforts are compensable here. To the extent such efforts were duplicative or useless, no compensation is appropriate. Separation is difficult, and the Court will make an overall value judgment based on its familiarity with the entire matter, in fixing a fee here, to eliminate that portion of the services and time charges from its finding of the *quantum meruit* fees to be allowed to all plaintiff's attorneys as a group. In doing so we do not purport to be engaging in an exact science; rather, we seek Justice, neither lavishness nor parsimony.

In response, by affidavit docketed December 27, 1977, Steinman asserts that defendant's contentions are barred from consideration by the provisions of paragraph 9 of the Stipulation of Settlement, previously quoted. He asserts that:

"4. Plaintiff's attorneys, having jointly applied to the Court for an allowance of fees for such services (including the fees of their experts in this litigation) and the fees requested being limited to not more than $800,000 in the aggregate, the defendants are barred from opposing such application, directly or indirectly, and Amerada Hess is bound by its solemn agreement 'to promptly pay any such allowance ordered by the Court provided that the total amount thereof does not exceed $800,000.' "

This argument misapprehends the intent and effect of that provision. With some justification, class action litigation generally has been perceived as productive of much mischief in the area of legal fees. *See, e. g., Van Gemert v. Boeing Company,* 573 F.2d 733, 735 (2d Cir., decided March 27, 1978).

■ Notwithstanding the quoted stipulation provision in ¶ 9, the matter of the fees remains for determination by the Court. Counsel for defendants, as officers of the court have not only the right but the duty to call to the Court's attention factors which should properly be considered in fixing the fee, notwithstanding that stipulation provision. The Court retains power to hear and determine the reasonable fee, guided by the needs for Justice and the appearance of Justice. Only thereby can the perceived evil noted in *Van Gemert, supra* be exorcised.

The quoted "no opposition" clause in the Settlement, which evolved following informal discussions between the Court, our Magistrate and counsel for all parties, fulfilled several important purposes. It placed a ceiling on the potential cost to defendants, removing any threat to them of a possible raid, at the end of a hard fought lawsuit ultimately settled after protracted contentious bargaining. It allowed members of the class, and the Court, in considering the wisdom and value of the proposed settlement, to understand in advance the intentions and expectations of the parties as to fees, and to consider the nature and extent of the interest in the outcome of the settlement hearing on the part of the attorneys recommending acceptance of the settlement. Finally, it gave the applicants some assurance that having achieved a sig-

nal victory for the class members they represented, they would not be subjected to punitive or vindictive insistence by their adversaries or the Court that each be put to his proof and cross-examined at an evidentiary hearing as to the reasonableness and necessity of each of the minutiae of their services and disbursements during almost nine (9) years of litigation in three different lawsuits, rendered by three different law offices. Bearing in mind that time charges accrued in proving or defending the compensability of prior time charges for legal services rendered are not themselves compensable, it was an assurance of value to have defendants' agreement that fees, disbursements and experts' charges not in excess of $800,000 would not be objected to. This provision did not preclude the Court from fixing the allowances for counsel fees as provided by the decided cases, nor did it preclude defendants from pointing out to the Court relevant considerations. Contentions to the contrary are rejected.

*Experts' Fees*

 Included within the agreed maximum fee limitation are the charges and disbursements of Martin J. Whitman, a financial expert, and B. P. Huddleston, an expert geologist or petroleum engineer. The experts testified at trial and the results of their testimony is as set forth in the Findings and Conclusions of the Court after trial. Further comment on the somewhat inconclusive effect of their testimony does not appear necessary. They testified, and must be paid reasonable fees. Their services rendered did not partake of the contingent nature of the attorneys' retainer nor could they. *See, Person v. Ass'n of the Bar,* 554 F.2d 534 (2d Cir. 1977).

Based on their submissions here and considering the entire trial record the fee of Mr. Huddleston's firm B. P. Huddleston & Co., Inc. is fixed and allowed in the amount of $18,000 payable by Amerada-Hess, and disbursements in the amount of $2,775.40 are allowed payable out of the settlement fund previously deposited in escrow for the benefit of the class, and the fee of Martin J.

Whitman is fixed and allowed in the amount of $35,000 payable by Amerada-Hess and disbursements in the amount of $1,200 are allowed payable out of the settlement fund previously deposited in escrow for the benefit of the class.

*Disbursements*

 By ¶ 9 of the Stipulation of Settlement, attorneys' customary disbursements were to be paid out of the settlement fund, but not to exceed $25,000. The attorneys claimed customary disbursements are allowed in the amount of $15,000 as claimed, payable from the settlement fund previously deposited in escrow. In addition, as is explained in paragraph 8(a) of the Stipulation of Settlement, plaintiff's attorneys advanced the costs of certain notices as therein set forth. The payments to the extent actually and reasonably incurred are necessary and represent expenses properly chargeable to the class as attributable to the creation and administration of the settlement fund. The amount thereof shall be itemized in a single supplemental paper and set forth in the order to be made herein, and paid from the settlement fund. See Supplemental Affidavit of Milton S. Gould, sworn to April 18, 1978 and filed herein, which read together with paragraph 1(iii) of his initial affidavit appears to show that such expenses amount to $25,006.64. The Court cannot, however, reconcile this sum with the total of ¶ 21 of the initial affidavit which appears to include "notification disbursements" with general expenses incurred in prosecution of the action.

*Legal Fees*

 Considering all the factors previously discussed, the Court will fix and allow the total fees payable by making a value judgment, giving appropriate weight to the claimed time charges, the result achieved, the standing of counsel, the contingent or speculative aspect of the case, and the difficulties, factual and legal, inherent in the lawsuit, reducing the claims to eliminate those efforts attributable to other related matters to the extent the Court believes

they were not helpful in this case. And we will not conclude our discussion without observing, again, that these lawyers brought $4,000,000 to the class, and courts fixing lawyers' fees must heed Saint Paul's admonition found in 1 Cor. 9:9.

The fees of all counsel are fixed and allowed in the total amount of $725,000, together with the sum of $53,000 as experts' fees, making a total of $778,000, which amount the Court finds reasonable and proper under all the circumstances of this case, to be paid by defendant Amerada-Hess. Disbursements and other expenses as hereinbefore allowed shall be payable out of the settlement fund. To the extent hereafter additional disbursements are necessarily incurred in connection with the administration of the settlement, subject matter jurisdiction is reserved to make such further directions as shall appear proper.

Settle order on notice or waiver of notice.