UNITED STATES of America,
Plaintiff-Appellee,

v.

IMPERIAL IRRIGATION DISTRICT, a
corporation, Defendant-Appellee,

John M. Bryant et al.,
Defendants-Appellees,

State of California, Defendant-Appellee,

Ben Yellen et al., Appellants.

Ben YELLEN et al., Plaintiffs-Appellees,

v.

Cecil D. ANDRUS et al.,
Defendants-Appellants.

Ben YELLEN et al., Plaintiffs-Appellees,

v.

Cecil D. ANDRUS et al.,
Defendants-Appellants,

W. L. Jacobs et al.,
Defendants-Appellants.

Nos. 71–2124, 73–1333 and 73–1388.

United States Court of Appeals,
Ninth Circuit.

April 23, 1979.

See also, Ninth Circuit, 595 F.2d 524.

Charles W. Bender, Patrick Lynch, James V. Selna, John F. Daum and Neil M. Soltman, O'Melveny & Myers, Los Angeles, Cal., for Landowner/appellees;

R. L. Knox, Jr., Horton, Knox, Carter & Rutherford, El Centro, Cal., for appellee Imperial Irrigation District;

Douglas B. Noble, Deputy Atty. Gen., Los Angeles, Cal., for appellee State of California;

Arthur Brunwasser, San Francisco, Cal., for appellants.

Before BROWNING and KOELSCH, Circuit Judges, and WOLLENBERG *, District Judge.

WOLLENBERG, District Judge:

## I. Rehearing and Rehearing In Banc

In petitioning for rehearing and rehearing in banc of the decision of this Court in No. 71–2124, filed August 18, 1977, appellees Imperial Irrigation District and John M. Bryant, et al., argue that standing of the Yellen group, intervenors-appellants herein, is predicated on the erroneous assumption that if Section 46 of the Omnibus Adjustment Act of 1926,[1] 43 U.S.C. 423e, were to

---

* The Honorable Albert C. Wollenberg, Senior United States District Judge for the Northern District of California, sitting by designation.

1. In pertinent part, Section 46 provides that:

No water shall be delivered upon the completion of any new project or new division of a project initiated after May 25, 1926, until a contract or contracts in form approved by the Secretary of the Interior shall have been made with an irrigation district or irrigation districts organized under State law providing for payment by the district or districts of the cost of constructing, operating, and maintaining the works during the time they are in control of the United States . . . and the execution of said contract or contracts shall have been confirmed by a decree of a court of competent jurisdiction. . . . Such contract or contracts with irrigation districts hereinbefore referred to shall further provide that all irrigable land held in private ownership by any one owner in excess of one hundred and sixty irrigable acres shall be appraised in a manner to be prescribed by the Secretary of the Interior and the sale prices thereof fixed by the Secretary on the basis of its actual bona fide value at the date of appraisal without reference to the proposed construction of the irrigation works; and that no such excess lands so held shall receive water from any project or division if the owners thereof shall refuse to execute valid recordable contracts for the sale of such lands under terms and conditions satisfactory to the Secretary of the Interior and at prices not to exceed those fixed by the Secretary of the Interior.

be enforced, land in the Imperial Irrigation District would become available at below-market prices. Said appellees further argue that the decision is internally inconsistent and is contrary to this Court's decisions in *Bowker v. Morton*, 541 F.2d 1347 (9th Cir. 1976), and *Turner v. Kings River Conservation District*, 360 F.2d 184 (9th Cir. 1966).

▆▆▆ Appellees take the position that even if the Court orders enforcement of Section 46, land in the District would not become available at below-market prices, and thus the relief would not end the harm of which appellants complain as required for standing by *Bowker v. Morton*, 541 F.2d at 1350. Enforcement of Section 46 would require that landowners execute recordable contracts for the sale of land in excess of 160 acres per private owner in order to receive irrigation water on the excess acres. Sales of land to meet the 160-acre limitation must by statute be at lower than market prices. Appellees state that Section 46 does not apply after March 1, 1978, because one-half of the construction charges for the irrigation project will have been paid. We held in *United States v. Tulare Lake Canal Co.*, 535 F.2d 1093 (9th Cir. 1977), *cert. denied*, 429 U.S. 1121, 97 S.Ct. 1156, 51 L.Ed.2d 571 (1977), that the statement in Section 46 that in the initial breakup of excess lands the Secretary of the Interior must fix the sale price "on the basis of its actual bona fide value at the date of appraisal without reference to the proposed construction of the irrigation works" applies regardless of the fact that construction charges for the irrigation project have been repaid. This decision expressly applies to all federal reclamation projects subject to Section 46. *Id.* at 1118. As we recognized in our opinion of August 18, 1977, 559 F.2d at 514, 522, the irrigation works added substantial value to the land for agricultural purposes, and thus it is only reasonable to infer that sales under the *Tulare* formula will be at below-market prices. Indications at trial by the Solicitor of the Department of the Interior that the Department has in the past been willing to recommend that excess lands be sold at current market val-

ues does not override the fact that the Secretary of the Interior is bound by law to discount the value added by the construction project in fixing sale prices for excess lands. That there was pre-project irrigation does not excuse this requirement. *United States v. Tulare Lake Canal Co.*, 535 F.2d at 1112–14.

The decision of August 18, 1977, in this action is neither inconsistent with *Bowker* nor is it internally inconsistent. The Court in *Bowker* set forth a three-prong test for standing which we applied in the case at hand; the test requires "that the plaintiffs must have alleged (a) a particularized injury (b) concretely and demonstrably resulting from defendants' action (c) which injury will be redressed by the remedy sought." 541 F.2d at 1349. The Court denied standing in *Bowker* to plaintiffs who sought enforcement of the acreage limitation by sale of excess lands at "reasonable" prices. Intervenors in the acreage case presently before us do not seek what this Court cannot provide, namely sale of land at any specified price defined by what price was "reasonable." Intervenors in the acreage case merely seek enforcement of the requirement in Section 46 that sales be at prices below current market value. The Court can issue a decree enforcing that code section that will ensure that any sales arising out of the acreage case are at below-market prices. While it is true that landowners cannot be forced to sell their lands, it is only reasonable to assume that some land will become available for sale rather than being put into other than agricultural uses.

For the same reason, our decision is not internally inconsistent. Although the parties who claim standing to bring the issues before the Court are essentially the same in both the residency and the acreage cases, as we stated in our opinion, 559 F.2d at 522, relief from the harm in the residency case is much more speculative than it is in the acreage case. In the residency case, plaintiffs seek to purchase land at prices they could afford, whereas in the acreage case this same group alleges a desire to purchase land at below current market prices. The

Court's order in the residency case cannot ensure sale of land at affordable prices, but in the acreage case it can enforce the pricing requirement of Section 46. Furthermore, in the residency case there is the alternative present for third-party landowners of moving into the District which is not present in the acreage case.

Another reason our decision is not inconsistent with *Bowker* is that plaintiffs in *Bowker* did not even allege a desire to purchase land should it become available for sale, whereas intervenors in the acreage case did allege such a desire.[2] The appellate court in *Bowker* stated that one reason it denied standing in that case was that plaintiffs did not allege that they sought to purchase land. 541 F.2d at 1350. Plaintiffs in *Bowker* also were not shown to meet the eligibility requirement to purchase land made available for sale as they were not residents of the district in which they sought to have the statute enforced. The gravamen of the complaint of the *Bowker* plaintiffs was that they were subject to a competitive disadvantage as farmers in a federally irrigated area in which the acreage limitation was in effect because the limitation was not being enforced in a state service area. Similar infirmities in the group of plaintiffs distinguish *Turner v. Kings River Conservation District*, 360 F.2d 184 (9th Cir. 1966), from the case at hand in that plaintiffs denied standing in that case did not allege a desire to purchase land in the irrigation district upstream as to which they sought to have the acreage limitation enforced.

Finally, although the Court in *Bowker* did indicate that in that case a court order discontinuing delivery of water to excess lands would not insure that the remedy sought of making land available for sale would result, the record in this case supports a different conclusion. This is not a case where "the solution to [intervenors'] problem depends upon decisions and actions by third parties who are not before the court and who could not properly be the subject of a decree directing the result sought by [intervenors]." *Bowker v. Morton*, 541 F.2d at 1350 (citation omitted). Both the District and the landowners are parties to the action, the latter having intervened as defendants below. Thus, both will be bound by a decree holding Section 46 applicable to excess lands and ordering a cutoff of water to any such lands where recordable contracts have not been executed. It is also clear from the record in this case that land in the Imperial Valley has long been devoted to agricultural use, that the entire economy of the Valley is based on agriculture and agricultural support industries, that the particular 233,000 acres involved constitutes some of the finest agricultural land in the world, and that federal irrigation facilities provide the only assured source of water in the Valley. Thus, "it [is] highly improbable that all of the large holdings of irrigable land would be withdrawn from agricultural use in order to avoid the requirements of Section 46." 559 F.2d at 522. *Compare id. with Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

The petition for rehearing of appellee State of California on the ground that the Court's opinion does not place a proper emphasis on the Wilbur letter and questions of fairness stemming therefrom is also denied. Appellees raise nothing that was not thoroughly considered in reaching the Court's decision.

Judges Browning and Koelsch have voted to reject the suggestions for a rehearing en banc, and Judge Wollenberg has recommended rejection of the suggestions for rehearing en banc. The full Court has been advised of the suggestions for en banc rehearing, and no judge of the Court has requested a vote on the suggestions. Fed. R.App.P. 35(b).

---

**2.** The Amendment to Complaint in which the *Bowker* plaintiffs alleged a desire to purchase land in the area in question was not considered filed by the district judge because it had been filed without leave of court. Order filed August 2, 1973, *Bowker v. Morton*, No. C–70–1274. The First Amended Complaint filed by order of court thereafter on February 8, 1974, did not allege a desire to purchase land.

Accordingly, the suggestions for a hearing en banc are rejected.

## II. Attorneys' Fees

■ Appellants move for attorneys' fees for the appeal of action No. 71–2124 in which they were successful in reversing the district court decision. As a consequence of the appeal, an estimated 233,000 acres of agricultural land will become available for purchase at below-market prices in parcels of 160 acres or less. Appellants advance two theories to support their claim for attorneys' fees: that the Civil Rights Attorneys' Fees Award Act of 1976 provides for counsel fees in cases brought under 42 U.S.C. § 1983 and that counsel fees may be awarded where, as here, a suit confers a substantial benefit to a class.

The argument that the Civil Rights Attorneys' Fees Award Act of 1976 entitles counsel to fees in this action is specious. That Act provides for the award of counsel fees in cases brought to enforce the civil rights laws, including 42 U.S.C. § 1983 which creates a cause of action for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Relying on the language of section 1983, appellants argue that the Civil Rights Attorneys' Fees Award Act of 1976 should be interpreted broadly to allow fees in cases which secure rights guaranteed by federal laws as well as those actions based on the federal Constitution. *Citing Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974). There is no need to reach this question, nor need we decide whether this lawsuit's vindication of the statutory rights of appellants was sufficient to make out a claim under 42 U.S.C. § 1983. This action was not brought pursuant to that code section, and therefore there is no statutory basis for the award of fees.

The theory that attorneys' fees should be awarded because this appeal will confer a substantial benefit on an ascertainable class has more promise for appellants,[3] but on analysis also fails to support an award of fees in this case.

The "substantial benefits" exception to the traditional rule disfavoring awards shifting legal fees is well recognized, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and survives the rejection in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) of the more sweeping "private attorney general" theory of counsel fee recovery. *See id.* at 257, 264–65 n.39, 95 S.Ct. 1612. The justification for this exception is that identifiable persons who benefit substantially from action of the party seeking fees should share the costs. "To allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Mills*, 396 U.S. at 392, 90 S.Ct. at 625. *See also Hall v. Cole*, 412 U.S. 1, 5–6, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). However, because the beneficiaries frequently are not parties or members of a certified class before the court, this exception is subject to an important limitation that bars an award in this case. The limitation is that there must be before the court a party against whom the court can assess fees who stands in such a relationship to the benefited class that the award will "operate to spread the costs proportionately" and "with some exactitude" among the identifiable beneficiaries of the fee-seeker's success. *Mills*, 396 U.S. at 394, 90 S.Ct. at 626; *Alyeska*, 421 U.S. at 265 n.39, 95 S.Ct. 1612. Only when this is true will attorney's fees be effectively spread among those who stand to gain from the litigation without contributing to it, rather than simply being shifted to the loser.[4]

---

3. Appellants do not seek fees on the "common fund" theory, from which the substantial benefit theory derives. No basis for such a claim appears, as no "identifiable fund" has been "create[d], discover[ed], increase[d], or preserve[d]" by appellants' successful appeal.

*Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 768–69 (9th Cir. 1977).

4. As the *Mills* Court put it: "[t]o award attorneys' fees in such a suit to a [successful] plaintiff . . . is not to saddle the unsuccessful

The two leading Supreme Court cases are illustrative. In *Mills*, a shareholder prevailed in an action to set aside the merger of his corporation into another because in recommending approval of the merger the directors of his corporation had failed to disclose that they were controlled by the acquiring company. The Court shifted the shareholder's attorney's fees to the corporation because the suit conferred a substantial benefit on all shareholders and the corporation itself, and because "[T]he court's jurisdiction over the corporation as the nominal defendant ma[kes] it possible to assess fees against all of the shareholders through an award against the corporation." 396 U.S. at 395, 90 S.Ct. at 627. All shareholders benefited from vindication of the securities fraud rules and, by requiring the payment of the counsel fees from the corporate treasury, all would be taxed their proportionate share of the costs through lowered dividends. The reasoning in *Hall v. Cole* is similar: the plaintiff-union member vindicated rights of free speech in union affairs and thus "rendered a substantial service to his union as an institution and to all of its members" (412 U.S. at 8, 93 S.Ct. at 1948); shifting plaintiff's counsel fees to the union would effectively charge all of the members with the cost of achieving the common benefit by taking a share of each member's dues.

Appellants urge, without supporting analysis, that their case is analogous to *Mills* and *Hall v. Cole*. If this is so, it must be because their success benefited a distinct class (those who will purchase excess irrigated land as a result of enforcement of the acreage limitation [5]), and because a suitable party is present (the District) against whom counsel fees can be assessed. Appellants satisfy the first requirement but not the second.

The class of beneficiaries to which appellants point is suitably "small in number and easily identifiable" (*Alyeska*, 421 U.S. at 264 n.39, 95 S.Ct. at 1625) to permit recovery under the substantial benefit theory.[6] It is not determinative that individual members of the class will not be identifiable unless and until excess land is sold below market value as a consequence of appellants' lawsuit. Ready identifiability is required to insure clear, concrete evidence that the fee-seeker's efforts produced actual benefits to others, and that fees are assessed only against beneficiaries—those who would be unjustly enriched by not sharing in the cost of producing the benefit—and not against persons whose positions are not substantially bettered because of the victorious lawsuit. If clear identification of the beneficiaries will come about reasonably soon after conclusion of the lawsuit, the substantial benefit theory may be available to authorize a fee award, although fixing and collecting the award would have

---

party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396–97, 90 S.Ct. 616, 628, 24 L.Ed.2d 593 (1970). *See also Hall v. Cole*, 412 U.S. 1, 6, 93 S.Ct. 1943, 36 L.Ed.2d 102 (1973).

**5.** Appellants do not describe the precise nature of the benefits this class will reap, although the primary benefit—the chance to buy land below market price—is evident. If the benefits are pecuniary only, the substantial benefits theory may be unavailable. *See Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 768–69 & n.7 (9th Cir. 1977). *But see Mills v. Electric Auto-Lite Co.*, 396 U.S. 275, 394 & n.19, 93 S.Ct. 1943, 36 L.Ed.2d 102 (1970) (approving cases applying theory to pecuniary benefits). We assume without deciding that appellants' success in this case will produce non-pecuniary as well as pecuniary benefits, and that the substantial

benefits theory is available where the benefits are mixed.

**6.** Appellants estimate that, as a result of their appeal, 233,000 acres of excess land will be freed for sale. If those lands are purchased in parcels of the maximum size (160 acres), approximately 1,450 parcels would be available. Smaller parcels would increase the number of beneficiaries in the class, but there can be little doubt the number would remain suitably small. *Cf. Burroughs v. Bd. of Trustees*, 542 F.2d 1128, 1132 (9th Cir. 1976) (no basis for determining size of the beneficiary class); *Brennan v. United Steelworkers of America*, 554 F.2d 586, 606 (3d Cir. 1977) (classes of 1,400,000, of 8,987, of 85,000, and of 250,000 are small enough).

Moreover, members of the beneficiary class can be readily identified by their land purchases.

to await identification of the beneficiaries. Cf. *Van Gembert v. Boeing Co.*, 573 F.2d 733, 736–37 (2d Cir. 1978).

But appellants fail to satisfy the second requirement: they have made no showing that the District is a proper party to be charged with appellants' attorneys' fees under the substantial benefit theory. The District is not in the same position as the corporation in *Mills* or the union in *Hall v. Cole*. In those cases the beneficiaries had pre-existing relationships with the corporation or union, and had contributed funds to the treasury from which the fee award was to come.[7] Thus, because the result secured in *Mills* and *Hall v. Cole* was, by its nature, of benefit to each shareholder or union member, the court had "reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting" through charging fees to the treasury to which each shareholder or union member had contributed in common. *Alyeska*, 421 U.S. at 265 n.39, 95 S.Ct. at 1625 n.39. Cf. *Skehan v. Bd. of Trustees of Bloomsburg State College*, 538 F.2d 53, 56 (3d Cir. 1976) (en banc). In this case, the result achieved is not beneficial to all landowners within the District. Those who own excess lands will be required to sell the excess at below-market prices, or will no longer receive water for irrigating those lands. If appellants' attorneys' fees were drawn from the District's general revenues, there would be no congruence between the funds disbursed as the fee award and the funds taken in from the beneficiary class in whose name that award is made.

Appellants suggest no alternative method of using District revenues as a vehicle to procure fees from the as-yet-unidentified beneficiaries. Their motion is to charge the District now for their fees. If an alternative is possible,[8] appellants have not advanced it, and the District has had no opportunity to respond. There is no basis before us for assessing attorneys' fees against the District.

### III. Costs

Appellants who were successful on appeal in No. 71–2124 have submitted a bill of costs in timely fashion pursuant to Federal Rule of Appellate Procedure 39(c). Appellants in Nos. 73–1333 and 73–1388, who were successful on appeal of the issues raised in those cases, did not submit a timely cost bill because they believed that these three cases had been consolidated for appeal and that therefore under Federal Rule of Appellate Procedure 39(a), a split decision had been rendered, and no party was entitled to costs because this Court did not order that costs be allowed.

 Federal Rule of Appellate Procedure 39(a) reads in relevant part that "if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the court." The cases giving rise to this appeal were tried separately below, and separate judgments were rendered. This Court's order of August 6, 1973, in No. 71–2124, provided that the issues arising out of these cases would be considered together on appeal, but it did not formally consolidate the cases. Therefore,

7. *See* Note, *Fee Awards and the Eleventh Amendment*, 88 Harv.L.Rev. 1875, 1883 (1975).

8. It might be suggested that the District could use its powers to levy assessments against land within the District (*see* Cal. Water Code §§ 25500–26500) or to collect charges for water service to District landowners (*id.* §§ 22280–22283) to pass fee costs on to the beneficiaries. We do not know whether the District has the power under state law to tax such supplemental amounts against a distinct class of landowners. We do not know if it would do so (assuming it has the power) absent a court order. We do not know if an order requiring such surcharges would comport with principles of com-

ity or with the Eleventh Amendment. Moreover, we have found no case holding attorney's fees assessable against a governmental body, as opposed to a union, corporation, or similar private body, on a pure substantial benefits rationale. *See* Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 Harv.L.Rev. 849, 897, 920–21 (1975). *See also* Note, *Reimbursement for Attorneys' Fees from the Beneficiaries of Representative Litigation*, 58 Minn.L.Rev. 933, 944–45 (1974).

Appellants have not advanced this surcharge possibility. We need not pass upon it *sua sponte* and we decline to do so in light of the substantial questions it raises.

the parties should be allowed costs in the case in which they prevailed. It has long been recognized that prevailing parties may be awarded costs on appeal and that such costs may be assessed against the states. *Fairmont Creamery Co. v. Minnesota,* 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927).

The Court's opinion of August 18, 1977, in *United States v. Imperial Irrigation District,* 559 F.2d 509 (9th Cir. 1977), should be modified to substitute "considered" for that of "consolidated" in the last sentence of the second complete paragraph on page 520. Because that sentence mislead them, appellants in Nos. 73–1333 and 73–1388 are granted permission to file their bill of costs as received by this Court on September 8, 1977.

ACCORDINGLY, IT IS HEREBY ORDERED that this Court's opinion of August 18, 1977, in *United States v. Imperial Irrigation District,* 559 F.2d at 520, is modified to substitute "considered" for that of "consolidated" in the last sentence of the second complete paragraph.

IT IS FURTHER ORDERED that the bill of costs heretofore lodged on behalf of appellants W. L. Jacobs, et al., in Nos. 73–1333 and 73–1388, may be filed by the Clerk and that such filing shall be deemed timely.

IT IS FURTHER ORDERED that appellants in No. 71–2124 be awarded costs in the amount of $3,218.25.

IT IS FURTHER ORDERED that appellants in Nos. 73–1333 and 73–1388 be awarded costs in the amount of $3,783.16.