**LOEHMANN'S INC., Plaintiff,**

**v.**

**S.S. GAROUFALIA, her engines, boilers, etc., United States Lines, Inc. and Greater N.Y. Container Service Inc., Defendants.**

**No. 85 Civ. 3482 (JEL).**

United States District Court,
S.D. New York.

Oct. 17, 1986.

Kahn & Horowitz, P.C., New York City by Irvin Lederer, for defendant Greater N.Y. Container Service, Inc.

Hill, Betts & Nash, New York City by Christopher Raleigh, for defendant U.S. Lines, Inc.

LUMBARD, Circuit Judge: *

This case arises out of the unexplained non-delivery of 41 of 125 cartons of women's blouses imported from Hong Kong by

* Sitting by designation

the plaintiff Loehmann's, a department store in the Bronx. Loehmann's sued defendants United States Lines, Inc., a shipping company, and Greater New York Container Services, Inc., a trucking company, on May 7, 1985, for the value of its lost merchandise, a total of $21,741.14. Loehmann's has settled its case against the two defendants on terms unknown to the court but which, in any event, are irrelevant. What remains to be decided is United States Lines' cross-claim against Greater New York Container Services to recover its legal fees and other expenses incurred in connection with this lawsuit.

The parties stipulated to most of the facts. United States Lines received plaintiff's shipment, consisting of 125 cartons of women's woven blouses, at the port of Hong Kong on April 18, 1984 for carriage to New York aboard the M/V Garoufalia. The container was sealed, and the ship discharged it on May 27, 1984, at Howland Hook, Staten Island. The seal was found intact upon delivery of the container.

On June 4, 1984, Greater New York's truck driver, Pat Moshetta, entered United States Lines' terminal at Howland Hook to take delivery of container USLU 2117892, which contained the 125 cartons. Moshetta testified that he hooked his cab to the container and brought it to the Customs dock for clearance by a U.S. Customs inspector. At the time of the inspection, the seal, still intact, was removed by the Customs official. He opened one carton, inspected it, and then re-sealed the container with a new seal, number 170596.

Moshetta took the container to a storage yard in Brooklyn where it remained overnight. On June 5, Moshetta returned to the yard, hitched his cab to the container and took it to the plaintiff's warehouse in the Bronx. Loehmann's receiving clerk, Bedford Ramirez, and Moshetta both testified that the truck contained only 84 of the 125 cartons upon its arrival at Loehmann's warehouse.

Ramirez and Moshetta gave conflicting testimony about the documentation accompanying the truck's delivery to Loeh-mann's. It was undisputed that Moshetta presented a shipping order on which Loehmann's was to indicate its acceptance of the goods. The order contained a top copy and two carbon copies beneath it. The parties stipulated to the admissibility of the second copy, which Loehmann's kept. This copy indicates that Ramirez accepted the goods and noted that 41 cartons were missing. Ramirez testified that the container was not sealed when it arrived, and there was no indication on Loehmann's copy of the shipping order that the container was sealed.

At trial Greater New York produced what purported to be a photocopy of the top copy of the shipping order. It showed—and Moshetta testified—that the container was sealed when it arrived at Loehmann's. Moshetta could not explain why, if the top copy showed that the container was sealed, Loehmann's carbon copy had no such indication. Counsel for Greater New York stated that the original top copy of the shipping order could not be located.

The court finds that the container was not sealed when it arrived at Loehmann's and that the plaintiff's cargo was lost while it was in Greater New York's custody.

■ By written agreement, in effect at the time of the loss, Greater New York and United States Lines defined their obligations in the event that there were any lost or damaged goods. In relevant part, clause 5(b) of the agreement states: "The Carrier (Greater New York) shall indemnify and hold [United States Lines] harmless from any and all claims, demands, actions, suits, proceedings, costs, expenses (including reasonable attorneys fees), damages and liability of any nature whatsoever ... in any manner arising out of, connected with or resulting from the possession, use, operation, maintenance or return of the equipment by itself or any Subsequent User, also including without limitation, any claims ... [and] expenses (including attorneys fees), damages and liability for the loss of, damage to or delay in shipping any goods being transported or store in such

equipment at any time during the use period." Accordingly, Greater New York must bear responsibility for the expenses incurred by United States Lines in connection with the loss of the merchandise.

■ United States Lines introduced evidence of the legal expenses it incurred in defending this action: counsel's bills totalling $17,860 in legal fees for 160.3 hours of attorneys' time and $988.44 in expenses. It now seeks to recover these amounts from Greater New York pursuant to clause 5(b) of their agreement. The Court finds that United States Lines is entitled to reasonable attorneys' fees. An award of attorneys' fees requires us to make a value judgment, giving appropriate weight to the claimed time charges, the result achieved, the standing of the counsel, the contingent or speculative aspect of the case, and the difficulties, factual and legal, inherent in the lawsuit. *See, e.g., DelNoce v. Delyar Corp.*, 457 F.Supp. 1051, 1057 (S.D.N.Y. 1978). The legal expenses incurred by the defendants here amount to nearly $19,000 in a case where the defendant faced a maximum potential liability of about $22,-000.

As simple as the facts may seem from the brief statement above, the assembling of the evidence and the numerous documents relative to the shipment and its handling undoubtedly required the considerable attention given by counsel. Having undertaken the case for United States Lines, counsel had the duty to do whatever had to be done to absolve the client from liability. However, time-honored considerations of satisfactory relations between attorney and client almost always renders it inadvisable to charge the client a fee which approximates the total amount at stake. As the Second Circuit held in an analogous situation in *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 320 (2d Cir.1985), the district court was "justified in concluding that 'prudent counsel' would not ask his client to pay $28,958 to prevent a judgment for only $30,000." Such a fee—like that sought by United States Lines here—is simply out of proportion to any value which the client may reasonably be expected to place on the services rendered. The result is that when an attorney bills the client in circumstances such as this case presents, he accepts the situation as one where the customary charges cannot be made. It would be unusual, to say the least, for a client to be agree to pay any such charges as United States Lines now asks this court to impose on Greater New York. In fact, United States Lines has thus far paid counsel a total of only $8,741.20 for services and $596.61 for expenses performed prior to June 2, 1986. There remains unpaid a bill for $9,127.00, plus $391.83 for expenses, incurred from June until October 10. This last bill covers United States Lines' efforts to complete its defense against Loehmann's as well as its efforts to recover attorneys fees from Greater New York.

In short, then, we see no reason to pass along to Greater New York any charge for services in an amount which would exceed what counsel would normally charge United States Lines, and which United States Lines could reasonably be expected to pay.

Accordingly, the court, pursuant to the indemnity provisions of the contract between U.S. Lines and Greater New York, directs the entry of judgment for United States Lines for $10,000 for legal fees, plus $988.44 in reimbursement of miscellaneous expenses, a total of $10,988.44.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.Proc. 52.

SO ORDERED.