**TOKIO MARINE & FIRE INSURANCE CO., LTD., Plaintiff,**

v.

**The GROVE MANUFACTURING CO., et al., Defendants.**

**Civ. No. 89–1485 (JP).**

United States District Court, D. Puerto Rico.

April 6, 1991.

See also 762 F.Supp. 1012.

José L. Ubarri García, Benjamín Acosta Law Firm, San Juan, P.R., for plaintiff.

Héctor Cuebas Tañón, Vicente & Cuebas, Santurce, P.R., for Milton Andrews, Douglas Andrews, Arecibo Rigging and Toa Equipment Rental.

Rafael Fuster Martínez, Ponce, P.R., for American Intern. Ins. Co. of P.R.

Charles Cordero and Darío Rivera Carrasquillo, Cordero, Miranda & Pinto, San Juan, P.R., for Grove Mfg. Co. and Walter E. Kiddie Co.

Amancio Arias Guardiola, Hato Rey, P.R., for Shintron Co. and Travelers Ins.

Juan A. Ramos Díaz, Cobián & Ramos, San Juan, P.R., for Tamachi, Inc. and Diamond Vision, Inc.

## ORDER

PIERAS, District Judge.

This is a case where the plaintiff Tokio Marine and Fire Insurance Company Ltd. alleges that codefendant Grove Manufacturing Co., manufactured a defective crane. Thus the issue of crane defects is crucial in the adjudication of this claim of the case.

During the trial the plaintiff moved for the qualification of an alleged expert by the name of Philip Alterman. Mr. Alterman currently works as an expert technical consultant for the S.T. Hudson International Company in Pennsylvania, and routinely offers his services as an expert witness. He has had many years experience in investigation of buildings, structures and civil works. Mr. Alterman's educational background includes a B.S.C.E. in civil engineering from the Pennsylvania State University.

## I. ADMISSION OF WITNESSES PURSUANT TO FED.R.EVID. 702

Federal Rule of Evidence 702 states the following:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In making the following decision, the Court is mindful of the opinion in the case of *In re Air Crash Disaster at New Orleans, La.,* 795 F.2d 1230, 1233 (5th Cir.1988), where the court recognized the trial judge's temptation to receive expert testimony by stating that the jury will "give it the weight it deserves." As the court pointed out, this easy explanation often masks the failure of the trial judge to confront an important trial decision. *Id.* The trial judge must be sensitive to qualifications of persons claiming to be experts. *Id.* For the reasons stated below, we deny plaintiff's request to have Mr. Alterman qualified as an expert.

## II. RULING ON CRANE DEFECTS EXPERT

Pursuant to Rule 702, when determining whether to admit the testimony of an expert, the Court must first examine who the proposed expert is: does she fall within the traditionally known fields of learning and expertise such as architecture, engineering or medicine, and does she possess the knowledge, skill, experience, training or education so that she can be qualified as an expert. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 702[04] (1988). Then we must examine the subject matter of the offered testimony, and whether the expert will help the jury understand the evidence or determine a fact in issue as Rule 702 provides.

Experts in the traditional professions work within fields which require rigorous professional training. These experts begin to develop their qualifications long before they are admitted to their particular professional school, because they must attend individual colleges and major in fields of study that prepare them for graduate school.

The best are admitted to these professional schools, sometimes ten applicants to a slot. The professional schools are extremely demanding and only the best students graduate. Then these professionals must pass further board and bar examinations and other difficult tests in order to be admitted into their profession—the lawyers in Puerto Rico know from the Puerto Rican Bar exam that only a very small percentage passes these exams.

These professionals go on to specialize in a particular area of practice. They develop a deep respect for truth and *ethics* which are of great importance in their practice. Professionals who do not conduct themselves within the ethical boundaries of their profession are subject to harsh penalties, including permanently surrendering their licenses to practice. Therefore they are always conscious of ethical behavior. We know then that their opinions are strengthened by professional safeguards that insure that the Court and jury will receive objective testimony and the truth as seen by the professional.

In light of these considerations, the Court finds that the education and experience of Philip Alterman, proposed expert in crane defects, does not qualify him as an expert witness for the following three reasons: 1) his educational background fails to rise to the level of specialized knowledge we deem necessary to qualify him as an expert; 2) his work experience lacks any involvement with the design or manufacture of cranes; and 3) his testimony would not possess the professional safeguards ensuring objectivity. In terms of the subject of the expert testimony to be offered in this case, the court must determine whether the offered testimony will assist the jury in understanding the evidence or determining a fact in issue. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* 702[03].

Mr. Alterman's educational background is insufficient to qualify him as an expert in this case. A degree in civil engineering

is not adequate preparation for the analyzing of problems which arise with machinery such as cranes, as is a mechanical engineer. Only a mechanical engineer can responsibly testify that lack of a certain attachment makes a crane defective. As Mr. Alterman lacks this specialized training he cannot be qualified as an expert in this case.

Mr. Alterman's lack of relevant work experience also prevents this Court from qualifying him as an expert. His work as a civil engineer in the construction field has not provided him with the necessary knowledge concerning the design and manufacture of cranes. This lack of specific knowledge would result in a violation of Fed.R. Evid. 703 if Mr. Alterman were allowed to testify. Fed.R.Evid. 703 mandates that "an expert's opinion be grounded on facts or data of a type reasonably relied upon by experts in the particular field." *Loehmann's Inc. v. S.S. Garoufalia*, 646 F.Supp. 867 (S.D.N.Y.1986). Mr. Alterman has never had any direct experience with the operation, repair or maintenance of cranes. Nor has he ever used a "load moment indicator." Furthermore, Mr. Alterman's experience in accidents which involved cranes, is not equivalent to the specialized knowledge of a mechanical engineer or crane designer and manufacturer. An investigator in accidents is not an expert in the fullest sense of the word.

Experts also run the risk of becoming "nothing more than an advocate of policy before the jury" *In re Air Crash Disaster*, 795 F.2d at 1233. The evidence as stated to the Court is to the effect that Mr. Alterman for years had testified as an expert in at least 15 different areas. Those areas of alleged expertise include construction safety; scaffolding; bulk oil terminals; bridges; cargo waterfront terminals; high rise construction; construction of high ways; construction of race tracks; the field of construction management; and construction drainage problems; amongst other areas of alleged expertise. Thus he is more a professional witness than an expert in crane defects. The Court understands that such a practice in effect makes the proposed witness an expert only for the party which employs him, rather than an objective expert witness. An expert witness should never become solely one party's expert advocate nor a "gun for hire". Rather, an expert witness should be an advocate of the truth with testimony to help the jury and the Court reach the ultimate truth in a case, which is the basis of any verdict.

As the Fifth Circuit has noted, the professional expert is a commonplace phenomenon in modern litigation. *In re Air Crash Disaster*, 795 F.2d at 1234. The fact that a person spends substantially all of her time consulting with attorneys and testifying in trials is not a disqualification, but it is not an automatic qualification guaranteeing admission of expert testimony. Experts whose "opinions are available to the highest bidder have no place testifying in a court of law, before a jury, and with the imprimatur of the trial judge's decision that [s]he is an 'expert[,]'" and the trial judge must decide whether the signs of competence and of the contribution of the proposed expert will aid in clearly presenting the dispute. *Id.* at 1234. Further, this court refuses to join the many other judges that give into "the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it 'the weight it deserves.'" *In re Air Crash Disaster*, 795 F.2d 1230, 1233 (5th Cir.1986).

Mr. Alterman is not qualified as an expert in crane defects. A true expert in crane defects would be a mechanical engineer, a person with vast experience in the design and manufacture of cranes, or a person involved in the teaching thereof. In addition the most qualified of experts also have an extensive list of published works. For instance, I remember a case from the time when I was in private practice, where the opposing counsel brought forward an expert who had a chair at MIT and had written extensively in mechanical engineering journals. That was an expert in the true sense of the word.

IT IS SO ORDERED.