**Sandra A. SMITH, Individually and as the Natural Mother and Legal Custodian of Marc W. Brown, a Minor Child Deceased, and Benjamen R. Brock, a Minor Child, Deceased, Cory Brock, a Minor Child, Deceased, and as Legal Guardian and Natural Mother of Jeramie D. Watkins, a Minor Child; Patti S. Gasper and Kenneth Gasper, Individually and as the Natural Parents and Legal Custodians of Nick J. Gasper, Minor Child, Deceased, and as Legal Custodians and Natural Parents of Luke D. Gasper, a Minor Child, Plaintiffs,**

v.

**FORD MOTOR COMPANY, Defendant.**

No. 1:93–CV–143.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

March 30, 1995.

771

Sherrill W. Colvin, Cynthia Rockwell, John O. Feighner, Haller and Colvin, Fort Wayne, IN, Daniel J. Sigler, Zwick and Sigler, Decatur, IN, for Sandra A. Smith.

W. Scott Montross, Townsend Hovde and Montross, Indianapolis, IN, for Patti S. Gasper, Kenneth Gasper.

Mark A. Garvin, Richard E. Steinbronn, Barnes and Thornburg, Fort Wayne, IN, for Ford Motor Co.

## *ORDER*

WILLIAM C. LEE, District Judge.

This matter is before the court on Defendant Ford Motor Company's Motion to Exclude Anticipated Testimony of James Grinolds. Ford filed the motion on January 24, 1995; plaintiffs responded on February 28, 1995; and Ford replied on March 10, 1995. The court held a Federal Rule of Evidence 104(a) hearing on March 17, 1995, and thereafter took the matter under advisement. For the following reasons, Ford's motion is granted in part and denied in part.

## *BACKGROUND*

This product liability case arises out a vehicle fire involving a 1985 Ford F–150 Supercab with dual fuel tanks. On March 20, 1993, Patti Gasper, Sandy Smith, and the Smith and Gasper children were driving south on I–69. Their vehicle caught on fire, as a result of which the four children who were riding in the bed of the truck were killed.

Plaintiffs have identified James Grinolds as an expert witness whom they expect to call to testify at the trial of this matter. Ford moves the court to exclude from the trial (1) any opinion testimony by James Grinolds concerning the design of the fuel, exhaust, and other systems of the Ford F–150 because he lacks the necessary knowledge, skill, experience, training, or education to

provide testimony on such issues; and (2) any testimony by Grinolds concerning the cause of the fire in the Ford F–150 because such testimony does not constitute scientific knowledge that will assist the trier of fact to understand a fact in issue.

### 1. James Grinolds' Testimony Concerning the Adequacy of the Design of the Ford F–150 Is Inadmissible.

■ The Federal Rules of Evidence provide the following:

*Rule 702 Testimony by Experts*

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise. F.R.E. 702. Rule 702 requires (1) that the witnesses qualify, by reason of training, education or experience, to state the proffered opinion, and (2) that the opinion will be helpful to the trier of fact. *United States v. Carr,* 965 F.2d 408, 412 (7th Cir.1992). "A district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898, 901 (7th Cir.1994) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

■ James Grinolds worked in the auto collision repair industry from approximately 1963 to 1983. While in the auto collision repair industry, Grinolds worked for a Chrysler dealership body shop and a General Motors dealership body shop and ultimately owned his own body shop. In this capacity, Grinolds was involved with repairing the structural and cosmetic components of vehicles, including but not limited to fuel systems, electrical systems, and power trains.

Grinolds formed his fire and accident investigation business in Minot, North Dakota, in approximately 1986. From 1986 to 1988,

Grinolds attended the North Dakota School of Science, taking four class hours per week in fire science. His studies focused on structure and automobile fires, proper building construction, properties of fuels, and fire management. As a result of his efforts, Grinolds received certificates in fire management and fire science from the North Dakota School of Science. Since beginning his fire and accident investigation business, Grinolds has been employed by an automobile manufacturer, insurance companies, law enforcement agencies, and law firms to investigate fires and determine their cause. Grinolds previously has been involved in the investigation of a Ford F–Series vehicle fire.

Although James Grinolds is qualified to render certain expert opinions in this case, he is not qualified to testify about the design of the fuel or electrical systems of the Ford F–150 truck.[1] Grinolds has no education, experience, or training in the design of motor vehicle fuel or electrical systems; his background and experience are in the area of automobile body repair and fire and accident investigation. Determining the cause of an automobile accident or vehicle fire is very different from determining the safety and feasibility of fuel and electrical system designs for automobiles. Further, expertise in the areas of automobile body repair and fire and accident investigation does not translate into expertise in the design of fuel and electrical systems. Thus, Grinolds is not qualified, "by reason of training, education or experience, to state the proffered opinion" about the design of the Ford F–150 fuel and/or electrical systems. F.R.E. 702. *See Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681 (5th Cir.1979) (holding that a mechanical engineer with no experience in designing automobiles was permitted to express opinions on general mechanical engineering principles, but was prohibited from testifying as an expert in the area of automotive design); *Hoban v. Grumman Corp.,* 717 F.Supp. 1129 (E.D.Va.1989) (finding that a licensed professional engineer with degrees

---

1. Indeed, even Ford concedes that "Grinolds' studies in arson investigation and traffic accident reconstruction may qualify him, under Rule 702, to offer opinions concerning origin and cause of automobile accidents, and automobile fires in particular, but they do not qualify him as an expert in the area of automotive design." Ford's Memorandum of Law in Support of Motion to Exclude Portions of the Anticipated Testimony of James Grinolds ("Ford's Memorandum"), p. 5.

in electrical and mechanical engineering lacked the requisite "knowledge, skill, experience, training or education" to render opinions concerning aerodynamics or jet engine design); *Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 762 F.Supp. 1016, 1017–18 (D.P.R.1991) (deciding that the proposed witness's work as a civil engineer in the construction field did not qualify him as an expert concerning the design and manufacture of cranes).

2. *James Grinolds' Testimony Concerning the Origin and Cause of the Fire in the Ford F–150 Is Admissible.*[2]

 James Grinolds stated the following during his deposition:

1. That the origin of the fire was under the bed of the vehicle in the area of the mid-ship fuel tank.

2. That the fire in the Ford F–150 was caused by one of the three following possibilities:

 a. A short circuit in the wiring harness in the left frame rail of the F–150 which caused a breach in the nylon 12 fuel line (also located in the left frame rail) and ignited the fuel;

 b. A short circuit in the wiring harness in the left frame rail caused by a gasoline leak from a selector valve, o-ring, or crack in the fuel line, which then breaches the nylon 12 fuel line and ignites the fuel; or

 c. Heat from the exhaust system breached the nylon 12 fuel line and ignited the fuel.

Grinolds Deposition, pp. 109, 123, 158. "As to the first opinion, while Ford will not stipulate its agreement with Grinolds, it agrees that Grinolds is qualified under Rule 702 to render the opinion and that in reaching the opinion Grinolds relies upon facts or data reasonably relied upon by experts in the pertinent filed." Ford's Memorandum, p. 12. As to the second opinion (and its subparts), Ford contends that it is inadmissible. Ford

claims that Grinolds' methodology in arriving at his opinions about the cause of the fire was "flawed and unscientific," thus rendering his causation opinions inadmissible. Ford's Reply Memorandum in Support of Its Motion to Exclude Portions of the Anticipated Testimony of James Grinolds ("Ford's Reply Memorandum"), p. 6.

Grinolds testified that when examining a vehicle to determine the cause and origin of a fire, he makes a determination by gathering as much data as he can about events leading up to the fire, identifying and interviewing eyewitnesses to the fire, and reviewing the evidence that remains. Additionally, if necessary, he will look at another vehicle that is intact in order to make a comparison. Grinolds had an opportunity to examine the Gasper vehicle, and in doing so, he looked at the burn patterns in the vehicle, the condition of the engine compartment, the condition of all of the remains of the vehicle, the wiring harnesses and components in the engine compartment, and all of the sheet metal. In arriving at his opinions, Grinolds also considered the descriptions given by the driver of the truck, one of the passengers in the truck, and another eyewitness to the fire. Also contributing to Grinolds' opinions is his knowledge about F–Series trucks and their components, along with his background, training, and experience in the area of fire and accident investigation.

Ford does not contest Grinolds' proposed testimony about the place of origin of the fire. Grinolds testified that the fire originated in the area of the midshift tank at a point close to the selector valve. Grinolds further testified that in arriving at this conclusion, he relied on the remains of the truck, descriptions of the fire, and the physical properties of the components in that area of the truck. He stated that the burn patterns indicate there was greater heat there for a longer period of time; and given the description and the physical properties of the components, that was only place it could have originated.

---

2. The initial inquiry, whether Grinolds is qualified to render such opinions, is not at issue in this case. As mentioned earlier, *see supra* note 1, even Ford concedes that Grinolds may be qualified to offer opinions concerning the origin and cause of automobile accidents and fires and does not contest this point.

Ford does contest Grinolds' proposed testimony about possible causes of the fire. Grinolds testified that he relied upon the following factors in arriving at his conclusions about the possible causes of the fire: descriptions of the fire; the condition of the vehicle; the characteristics of the components of the truck; the location of the truck's components; possible heat sources in the truck's components; testimony or statements of witnesses; and the physical properties of the materials that make up the fuel system and electrical system. Thus, Grinolds used essentially the same method as he did in arriving at his conclusion about the origin of the fire, a conclusion (and method) about which Ford does not contest Grinolds' ability to testify.

This court finds that Grinolds' proposed testimony satisfies the requirements of Federal Rule of Evidence 702. In *Daubert*, the Supreme Court found that before expert testimony is admitted, the trial court judge, acting as a "gatekeeper," must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid...." *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796. In other words,

the judge must determine whether the expert's opinion has "a reliable basis in the knowledge and experience of ... [the expert's] discipline." This task requires that the district court rule out " 'subjective belief or unsupported speculation.' " *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir.1994) (quoting *Daubert*, —— U.S. at ——, 113 S.Ct. at 2795). The *Daubert* Court noted:

> Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.

*Daubert*, —— U.S. at ——, 113 S.Ct. at 2795. From all indications, Grinolds has adhered to a reliable method of fire and accident investigation. To the extent that the rule in *Daubert* pertaining to "scientific knowledge" applies to this situation,[3] Grinolds' proposed testimony appears to have a reliable basis in his knowledge and experience and is not merely subjective belief or speculation.

■ Ford claims that Grinolds began his investigation with the conclusion of the existence of a product defect, and "reasoned from an end result in order to hypothesize

---

**3.** The issue in *Daubert* was whether serious birth defects were caused by the mothers' prenatal ingestion of Bendectin, a prescription drug marketed by Merrell Dow Pharmaceuticals, Inc.; therefore, the *Daubert* case discusses F.R.E. 702 in terms of "scientific" evidence. As has been noted by some courts, *Daubert* 's focus appears to be on "novel scientific evidence" and the "junk science" problem. *See, e.g., Iacobelli Const. Inc. v. County of Monroe*, 32 F.3d 19 (2d Cir.1994) (holding that affidavits submitted by a geotechnical consultant and an underground-construction consultant—summarizing and analyzing site conditions, contract documents, and project results—did not present the kind of "junk science" problem that *Daubert* meant to address); *Lappe v. American Honda Motor Co., Inc.*, 857 F.Supp. 222 (N.D.N.Y.1994) ("*Daubert* only prescribes judicial intervention for expert testimony approaching the outer boundaries of traditional scientific and technological knowledge.") However, as the *Daubert* Court itself stated, "we do not read the requirements of Rule 702 to apply specially or exclusively to unconventional evidence." *Daubert*, —— U.S. at —— n. 11, 113 S.Ct. at 2796 n. 11.

The Court provided a non-exclusive list of four factors, none of which alone is determinative, that would be useful in determining the soundness of the scientific methodology from which

the proffered conclusions are derived: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error or the existence of standards; and (4) whether the theory or technique has been generally accepted. *Id.* at —— ——, 113 S.Ct. at 2796–97. However, before discussing these factors, the Court stated, "We are confident that federal judges possess the capacity to undertake this review. Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test."

*Id.* at ——, 113 S.Ct. at 2796.

In the present case, because of the nature of the expert witness, the four factors laid out in *Daubert* are not as readily applicable. In cases where a novel scientific theory or technique is presented, these four factors are effective means of determining whether such a theory or technique "will assist the trier of fact to understand or determine a fact in issue." The participation of Grinolds is not based on novel scientific evidence or testimony. In this case, he will participate as a fire and accident investigator and convey opinions relating to the Ford F–150 fire. His opinions are based on facts, an investigation, and traditional automobile body repair and fire and accident investigation expertise.

what needed to be known but was not." Ford's Reply Memorandum, p. 8. Ford states that two days after Grinolds first learned of the Gasper/Smith accident through a newspaper article, he sent a letter to attorney Dan Sigler, which discussed his view of the various defects in the Ford F Series truck. Ford asserts that "Grinolds set forth these opinions even though he had not inspected the vehicle, reviewed any of the investigative materials pertaining to the fire or spoken with any of the witnesses." Ford's Reply Memorandum, p. 7.

The court finds that when Grinolds sent his initial letter to Sigler, he did not intend it to represent his opinions on the cause and origin of the fire. Grinolds testified at the hearing that he did not intend the letter to be opinions on the cause and origin of the Gasper truck fire. He stated that the purpose of the letters was to try to give a general description of some of the components of the F–Series trucks. This testimony is consistent with the content of the letter. The March 24, 1993, letter states "RE: FORD F SERIES TRUCK FIRES" at the top of the first page. This indicates that Grinolds was writing generally about Ford F–Series trucks, and was not rendering a conclusion about the Gasper/Smith accident. The content of the letter further supports the assertion that Grinolds was giving Sigler information about F–Series trucks based on his knowledge and experience with them. Thus, Grinolds' letter to Sigler is not evidence of a flawed methodology on the part of Grinolds.

At the hearing, Ford attempted to identify "proper accident reconstruction methodology" and have Grinolds agree as to these principles on the witness stand.[4] With respect to these "principles," Ford claims that Grinolds' opinions about causation are inadmissible because he included possibilities that are not in fact possible. Ford also asserts that Grinolds' opinions about causation are

inadmissible because he has failed to rule out other possible causes of the fire. However, according to Grinolds' own testimony, his "methodology" involved his taking into account the following factors in arriving at a conclusion: descriptions of the fire; the condition of the vehicle; knowing the characteristics of the components of the truck; the location of the truck's components; possible heat sources in the truck's components; testimony or statements of witnesses; and the physical properties of the materials that make up the fuel system and electrical system. Ford does not claim that Grinolds failed to take any of these factors into account. "[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Daubert*, —— U.S. at ——, 113 S.Ct. at 2795. *See also Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 613 (7th Cir.1993) ("The testimony need not be known to a certainty.").

Ford, in arguing with the possible causes of the fire that Grinolds may or may not have included in his opinions, is in fact arguing with Grinolds' conclusions, not his methodology in arriving at certain opinions. Ford can more appropriately attack Grinolds' inclusion or exclusion of certain possibilities upon cross-examination at trial. As the Supreme Court noted in *Daubert*,

> Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.... Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judg-

---

**4.** Ford identifies the following principles as "scientific methodologies":

(1) One should review all the evidence before forming a conclusion;

(2) One should make certain that everything that is considered as a possibility is in fact possible;

(3) Everything included as possible causes should be consistent with the known evidence;

(4) One should not exclude a possibility unless the facts require its exclusion; and

(5) One should not assume things, particularly those things which are capable of being proven one way or the other.

Hearing Transcript, pp. 81–84.

ment ... and likewise to grant summary judgment.

—— U.S. at ——, 113 S.Ct. at 2798.

Ford contends that Grinolds' opinions are based upon speculation and assumption. Ford claims that Grinolds found no physical evidence and did no testing to support either his theory that an electrical short circuit or heat from the exhaust may have breached the fuel line and ignited the fuel. At the hearing, Ford questioned Grinolds about whether he had conducted testing himself or was aware of any testing that had shown that the exhaust system can produce sufficient heat to melt nylon 12 fuel lines. While Grinolds admitted that he had never conducted such testing, he stated that he was aware of exhaust temperature tests to demonstrate the melting of nylon 12 fuel lines that had been conducted. Thus, to the extent that this specific allegation by Ford is a methodology issue, Ford has failed to show that Grinolds was not aware of any testing to prove the point upon which he relies with regard to the exhaust system producing the heat that may have breached the fuel line. Additionally, as mentioned earlier, *see supra* note 3, the testing factor is not as relevant to the methodology issue in this case, which does not present a "novel" scientific technique.

Furthermore, in response to Ford's argument that Grinolds did not find physical evidence to support his theory, any paucity of evidence with regard to the remains of the truck was a direct result of the fire. Grinolds necessarily relied on many additional factors in arriving at his opinions: descriptions of the fire; the characteristics of the components of the truck; the location of the truck's components; possible heat sources in the truck's components; testimony or statements of witnesses; and the physical properties of the materials that make up the fuel system and electrical system.

Plaintiffs have satisfied the requirements of Rule 702 by demonstrating that James Grinolds' opinions have "a reliable basis in the knowledge and experience of his discipline." *Daubert,* —— U.S. at ——, 113 S.Ct. at 2796. Ford's alleged problems with Grinolds' testimony about the cause of the fire in

the Ford F–150 are most appropriately raised on cross-examination.

### CONCLUSION

For the foregoing reasons, Ford's Motion to Exclude Portions of the Anticipated Testimony of James Grinolds in GRANTED IN PART and DENIED IN PART. James Grinolds' testimony concerning the adequacy of the design of the Ford F–150 is inadmissible; and James Grinolds' testimony concerning the origin and cause of the fire in the Ford F–150 is admissible.