Jose Miguel CARBALLO
RODRIGUEZ, et al.,
Plaintiffs

v.

CLARK EQUIPMENT COMPANY,
et al., Defendants

Civil No. 99–1446(JP).

United States District Court,
D. Puerto Rico.

June 6, 2001.

Vicente Santori–Coll, Jorge M. Torres–Gómez, Hato Rey, PR, for Plaintiff.

Ramón L. Viñas–Bueso, Rivera Tulla & Ferrer, Hato Rey, PR, for Defendants.

## ORDER

PIERAS, Senior District Judge.

The Court has before it Defendants Clark Equipment Company ("Clark"), In- gersoll–Rand Company, Volvo Construction Equipment North America, Inc., and the Dial Corporation's (collectively, "Defendants") Motion in Limine to Preclude Plaintiffs' Expert Witness Raymond R. Hagglund (docket No. 135) and Plaintiffs' Opposition thereto (docket No. 138).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that Rule 702 imposes a special obligation upon a trial court judge to "ensure that any and all scientific testimony ... is not only relevant, but reliable." 509 U.S. at 589, 113 S.Ct. at 2786.

A three-part test governs the admissibility of expert testimony. First, a proposed expert witness must be qualified to testify as an expert by "knowledge, skill, experience, training, or education." Fed. R.Evid. 702; *United States v. Shay*, 57 F.3d 126, 132 (1st Cir.1995). Second, the trial judge must determine whether the proposed expert testimony is reliable. *See Daubert*, 509 U.S. at 592, 113 S.Ct. at 2796; *Shay*, 57 F.3d at 132. The judge assesses "whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue."[1] *Id.* at 592–93, 113 S.Ct.

---

1. Specific factors that a trial judge is to consider when evaluating the reliability of pro- posed expert testimony include: (1) whether the theory or technique can be and has been

at 2796. When assessing the reliability of technical or specialized expert testimony, as opposed to scientific testimony, the trial judge exercises "broad latitude" both in how it determines the reliability of the testimony, and in the ultimate reliability determination. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). Finally, the judge must ensure that the proposed expert testimony "will assist the trier of fact to understand or determine a fact in issue." *Id.; Shay*, 57 F.3d at 132–33. The First Circuit has observed that "[b]ecause an expert witness's usefulness is almost always a case-specific inquiry, the law affords trial judges substantial discretion in connection with the admission or exclusion of opinion evidence." *Bogosian v. Mercedes–Benz of North America, Inc.*, 104 F.3d 472, 476 (1st Cir.1997).

Turning to the case at bar, Plaintiffs' proffered expert, Dr. Raymond R. Hagglund, P.E., is a mechanical engineer who possesses a Ph.D. in Theoretical and Applied Mechanics from the University of Illinois. He is a Professor at the Worcester Polytechnic Institute in Massachusetts. According to his curriculum vitae, from 1956 to 1991, Dr. Hagglund served as an industrial design consultant to dozens of

companies and entities, including Boeing Airplane Company, Raytheon, Hiab–Foco, TREMCO, NELCO, American Bosch, and Olson Manufacturing. In this capacity, Dr. Hagglund formulated designs and mathematical design equations, reviewed proposed designs, and performed design experiments for industrial products including cranes and braking devices. Dr. Hagglund served as an industrial consultant conducting safety analyses from 1974 to 1977, during which time he performed an OSHA analysis of truck cranes for Hiab–Foco. Since 1968, Dr. Hagglund has testified as an expert witness in approximately 1,500 products liability cases.

Defendants submit a lengthy memorandum in support of their motion in limine to exclude Dr. Hagglund, supplemented by the deposition testimony of Dr. Hagglund, his Rule 26 report, and curriculum vitae. Defendants' two principal contentions are that: (1) Dr. Hagglund's educational background and experience fail to qualify him as an expert who could opine on the design of the hoist brake mechanism in the 700–TC Lima crane at issue, and (2) Dr. Hagglund's opinion is unreliable. The Court addresses each of these arguments in turn.

Regarding Dr. Hagglund's educational background and experience, Defendants cite *Tokio Marine & Fire Ins. Co. v. Grove Manuf. Co.*, 762 F.Supp. 1016 (D.P.R.) (Pieras, J.), for the proposition that a pro-

tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) general acceptance in the scientific community. *Id.* at 593–94, 113 S.Ct. at 2797. When the expert testimony at issue is based not upon scientific knowledge, but rather "technical" or "other specialized" knowledge, the two-part *Daubert* test continues to govern, but the specific factors considered under the reliability prong are applied in a more flexible manner. *See Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 141–42, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999). The Supreme Court has stated that when assessing the reliability of technical or specialized expert testimony, "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* (emphasis added). The Court noted, however, that *Daubert's* list of specific factors "neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141, 119 S.Ct. at 1171.

posed expert in crane defects who had no relevant work experience concerning the design and manufacture of cranes nor publications in that field, should be excluded from testifying under Rule 702. In that case, however, the proposed expert, Philip Alterman, held a degree in civil engineering and possessed work experience only as a civil engineer in the field of construction. *See id.* at 1017–18. These facts loomed large in the Court's analysis, as it expressly found that Alterman's background in civil engineering, as opposed to mechanical engineering, did not adequately prepare him to express an opinion concerning problems that arise with machinery such as cranes. *See id.* As the Court stated: "Only a mechanical engineer can responsibly testify that lack of a certain attachment makes a crane defective." *Id.* at 1018.

The First Circuit's holding in *Bogosian,* also cited by Defendants, is fully consistent with this analysis. There, the Circuit Court upheld the trial judge's exclusion of expert testimony on issue of design defect, where the proffered expert did not possess an engineering degree, but rather held only a bachelor's degree in industrial and vocational education and a certification as a master automobile technician. *See Bogosian,* 104 F.3d at 476–77 ("While not dispositive, the lack of a mechanical engineering degree or other engineering expertise certainly calls into question Davidson's ability to criticize the design of a transmission parking mechanism and its operation under various circumstances.")

■ By contrast, Dr. Hagglund possesses a degree in mechanical engineering, teaches courses in Mechanical Design, and has worked as an industrial design consultant on a wide array of projects, including those involving cranes and braking systems. The Court therefore finds that his educational background in mechanical engineering, and his work experience in mechanical design, including projects involving machinery such as cranes, qualify Dr. Hagglund to express an opinion with respect to the design of the hoist brake mechanism at issue in this case.

■ The next step in the *Daubert* analysis requires this Court to examine the reliability of Dr. Hagglund's proffered opinion. Dr. Hagglund relies on the following data in arriving at his conclusion that the hoist brake mechanism in the subject crane is defective: (1) the affidavits of Juan Felipe Thomas–Carty and William Natal–Rivera, eyewitnesses and employees of Redondo who observed the fourton load drop twice on December 8, 1990; (2) the affidavit of Santos López–Irizarry, who testifies that he operated the crane after its regular operator went to the bathroom, and attempted to lift the load and apply the hoist brake, but that his foot slipped off the brake, causing the load to drop; (3) the affidavit of José Bercedoni, a welder and employee of Redondo who performed examination of the hoist brake latch mechanism approximately two weeks before the December 8, 1990 accident to determine whether there was a welding solution that would permit the latch to hook up completely; (4) a physical examination of the hoist brake mechanism in a Lima 700–T crane in connection with a prior and separate litigation ("the Morrie case"); (5) the Operator's Manual for the Lima 700–T crane; (6) a letter from Joel Felkey, Manager of Crane Service of VME Americas Inc. to VME Distributor Parts and Service Managers, dated February 21, 1990, accompanied by a service bulletin, requesting help in alerting owners of Clark & Lima lattice cranes of a potentially improper hoist brake application; and (7) Clarks' admission that the design of the hoist brake latch mechanism and the upper

works of the Lima Brand Model 700–HC, 700–T, and 700–TC cranes are similar.[2]

Based on this information, Dr. Hagglund concludes that the hoist brake latch mechanism in the Lima 700–TC crane at issue was defectively designed, due to the risk of false positive latching. Dr. Hagglund further concludes that this design defect caused the load on the Lima 700–TC crane to drop twice on December 8, 1990, first after the regular crane operator left the crane to use the bathroom, and again after Santos López–Irizarry lifted that load and attempted to engage the foot brake, believing it was properly engaged. Dr. Hagglund states in his report that a load cannot drop when the hoist brake is properly engaged, which is the case when the throat of the latch pin rests within the hook. When the hook is falsely latched, it rests underneath the latch pin, on its bottom surface, giving the operator the impression that the brake is engaged. In this position, however, the tip of the hook could slip off the bottom surface of the latch pin and cause the load to drop. Concerning the second drop, Dr. Hagglund opines that Santos López–Irizarry experienced the sensation that his foot slipped off the brake pedal because the tip of the hook slipped off the latch pin, causing the brake pedal to snap under the operator's foot. Dr. Hagglund further states that the crane operator has no way of knowing whether the brake is properly engaged while seated in the operator's seat in the cab of the crane.

■ The Court finds that Dr. Hagglund's expert testimony, as described in the preceding paragraph, is reliable under the principles enunciated in *Daubert* and *Kumho,* and therefore admissible. Several items in the report, however, do not constitute proper matters upon which Dr. Hagglund is qualified or positioned to provide an expert opinion, and therefore will be stricken. These include the second numbered paragraph in the section of the report entitled "OPINIONS," where Dr. Hagglund states: "In my opinion, the designers, manufacturers and sellers of the Model 700–TC crane were negligent because they did not perform a proper safety analysis of the hoist brake latching system...." In the second paragraph within the sixth numbered paragraph, Dr. Hagglund again purports to offer testimony that Defendants acted negligently by failing to recall the crane or issue warnings or instructions to users about the false latching condition. These statements do not properly assist the trier of fact because they pretend to draw ultimate legal conclusions, thereby invading the province of the jury. *See Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 100 (1st Cir.1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact") (quoting *Burkhart,* 112 F.3d 1207, 1212 (D.C.Cir.1997)); *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination."). Finally, Dr. Hagglund may not state as his "opinion" the date on which Clark was considered to have notice of the alleged design

---

2. In a separate ruling, the Court found the February 21, 1990 letter from Joel Felkey, and the accompanying service bulletin, inadmissible. The Court's analysis herein, however, is unaffected by that ruling, except to the extent that the report, if and when handed to the jury, shall be redacted to remove any references to that evidence. *See* Fed.R.Evid. 703.

defect; this is a fact in issue, and neither Dr. Hagglund's expertise nor his personal knowledge provides a basis upon which he may opine as to that fact. Accordingly, the Court strikes the first paragraph within the sixth numbered paragraph in the "OPINIONS" section, where Dr. Hagglund states that in his opinion, Clark knew of the design defect as early as September 1973.

**IT IS SO ORDERED.**